THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| MICHAEL P. *et al.*, | ) | |
| Plaintiffs, | ) | MEMORANDUM DECISION AND ORDER |
| vs. | ) | |
| AETNA LIFE INSURANCE COMPANY, and BECTON, DICKINSON AND COMPANY GROUP LIFE AND HEALTH PLAN, | ) ) ) | Civil No. 2:16-cv-00439- DS |
| | ) | |
| Defendants. | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Plaintiffs are parents Michael and Karilyn P. and their daughter Kirstyn, who seek to recover benefits for Kirstyn's residential treatment under 29 U.S.C. § 1132(a)(1)(B). Through his employment and during the relevant time period, Michael P. was a participant in the Becton, Dickinson and Company Group Life and Health Plan (the "Plan")[1] and Karilyn and Kirstyn were beneficiaries of the Plan. The Plan was administered by Aetna Life Insurance Company ("Aetna"). The Plan is a self-funded employer sponsored welfare benefit plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

---

[1]The Joint Pre-litigation Record, filed under seal, consists of Plan and other documents Bates stamped AETPER0001-AETNAPER00534, BDPLAN000001-000058, and SCH0001-00016.

Kirstyn, who has a history of mental, behavioral and emotional disorders, was treated at New Haven Residential Treatment Center ("New Haven"). Aetna by letter dated July 13, 2015, denied Plaintiffs' claim for services because New Haven did not meet the Plan's definition of a residential treatment facility and, therefore, it was not a covered service. (AETPER00130-134).

Plaintiffs filed two appeals with Aetna.

By letter dated September 19, 2015, Plaintiffs filed a level one appeal asserting that because New Haven is duly licensed in Utah it should be covered as a residential treatment center, and that Aetna's denial of benefits was a violation of the Mental Health Parity and Addictions Equity Act of 2008 (the "Parity Act"). (AETPER00123-128).

Aetna failed to issue its level one appeal decision within 60 days as required. (AETPER00484; 29 C.F.R. § 2560.503-1(i)(1)(i)). On January 1, 2016, Plaintiffs called to request a decision on the appeal. Aetna acknowledges the delay in notifying Plaintiffs of its decision, but asserts that a decision on the appeal was made on October 24, 2015. ( AETPER0046-048 & 00260). Aetna finally issued its denial of Plaintiffs' claims by letter dated December 31, 2015, stating that Plaintiffs failed to comply with precertification procedures as required, and repeating that New Haven did not qualify as a residential treatment facility under the Plan. (AETNAPER00154-156).

Plaintiffs filed a level two appeal on February 8, 2016, arguing among other things, that-- precertification cannot be a basis for denial because the Plan states that failure to precertify would only result in a reduction of benefits; they were not given a fair level one appeal because Aetna's response contained no explanation as to how the reviewer arrived

2

at its conclusion; residential treatment was a covered benefit; and, Aetna's failure to pay for treatment at New Haven violated the Parity Act. (AETNAPER00159-165).

Aetna reported its final appeal decision to Plaintiffs in a letter dated February 24, 2016, upholding its denial because Plaintiffs failed to comply with required precertification procedures set forth in the Plan. (AETPER00219-221).

This litigation followed. The parties have filed cross-motions for summary judgement.

## II. Standard of Review[2]

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. V. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the administrator discretionary authority, courts "employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (internal quotation marks and citation

---

[2]In an ERISA case, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F. 3d 789, 796 (10Cir. 2010) (citation and internal quotation marks omitted).

omitted). ³ Aetna contends that an arbitrary and capricious standard of review applies, while Plaintiffs urge that de novo review is applicable.⁴

It is undisputed that Plan language properly delegates discretionary authority to Aetna which ordinarily suggests deferential review. However, Plaintiffs assert that *de novo* review applies because Aetna failed to strictly comply with Plan requirements for review of their September 19, 2015 appeal. The Court agrees. ⁵

Procedural irregularities, such as the plan administrator's failure to comply with ERISA or Plan mandated time limits in deciding an administrative appeal, **"require"** application of de novo review. *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F. 3d 789, 796 (10th Cir. 2010) (emphasis added) (applying de novo review where the plan administrator resolved the administrative appeal 170 days after receiving the appeal instead of within 60 days as required by ERISA regulations and plan provisions). *See also Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1315-1318 (10th Cir. 2009) (de novo review applied where plan administrator unduly delayed both in initially deciding the claim and in resolving the

---

³Under the arbitrary and capricious standard, the court's "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith." *Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 825-26 (10th Cir. 2008)(internal alterations and quotation marks omitted). An administrator's decision will be upheld "so long as it is predicated on a reasoned basis." *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006).

⁴Under a de novo standard of review, the court reviews the decision of the plan administrator for correctness without deferring to the plan administrator's decision. *Gilbertson v. AlliedSignal, Inc.*, 172 Fed. Appx. 857, 860 (10th Cir. 2006).

⁵The Court rejects Plaintiff's argument that ERISA requirements require de novo review for Aetna's failure to engage in a meaningful dialogue with Plaintiffs. *See* note 6.

4

subsequent appeal); *Hancock v. Metro Life Ins. Co.,* 590 F.3d 1141, 1152 (10th Cir. 2009) ("de novo review may be appropriate if the benefit-determination process did not substantially comply with ERISA regulations"). It is uncontroverted that Aetna failed to notify Plaintiffs of its initial decision within the time-frame required.

In opposing de novo review, Aetna, in essence, argues that it has substantially complied with the relevant time requirements. *See* Def.['] Mem. Opp'n at 17 ("Here, Plaintiffs have failed to show anything more than a *de minimis* departure from the procedural terms of the Plan with respect to timeframe for mailing members notice of an appeals decision, and have not shown any *substantive* harm.").

This Court, like other courts, need not decide the "continuing validity of the substantial compliance test we have used to avoid creating a rule that would automatically permit *de novo* review for every violation of the deadlines." *Rasenack*, 585 F.3d at 1316. As explained in *LaAsmar*:

> We need not decide whether that "substantial compliance" doctrine still applies to the revised regulation at issue here, 29 C.F.R. § 2560.503-1, because even assuming it does apply, MetLife did not substantially comply here with ERISA's requirement of a timely resolution of an administrative appeal. In our cases addressing the prior regulation, we stated that an administrator substantially complied if the procedural irregularity was "(1) 'inconsequential'; and (2) in the context of an on-going, good-faith exchange of information between the administrator and the claimant." *Finley*, 379 F.3d at 1174 (quoting *Gilbertson*, 328 F.3d 635); *see also Rasenack*, 585 F.3d at 1317. Assuming, without deciding, that test would apply under the revised regulation, MetLife has failed to meet it because the 170-day delay in this case did not occur within "the context of an on-going, good-faith exchange of information between the administrator and the claimant." *Finley*, 379 F.3d at 1174 (quoting *Gilbertson*, 328 F.3d at 635).

*LaAsmar,* 605 F. 3d at 800. The same holds true for this case. Aetna points to no evidence of record that there was any such ongoing good faith exchange of information

between it and Plaintiffs. Therefore, even assuming that the substantial compliance doctrine is still valid, Aetna has failed to meet that test. The Court, therefore, will apply a de novo standard of review.

## III. DISCUSSION

### A. Denial of Coverage

For the reasons that follow, the Court agrees with Aetna that because New Haven does not meet the Plan's definition of a Residential Treatment Facility, and because Plaintiffs failed to obtain precertification as required, Plaintiffs' claim for coverage at New Haven was properly denied.

### 1. Residential Treatment Facility

Aetna initially denied Plaintiffs' claim because New Haven did not meet the Plan's definition of a residential treatment facility. The Plan defines Residential Treatment Facility as an institution that meets a list of requirements, including the following: "**Services are managed by a licensed Behavioral Health Provider who**, while not needing to be individually contracted, **needs to** (1) **meet** the Aetna **credentialing criteria** as an individual practitioner, **and** (2) **function under the direction/supervision of a licensed psychiatrist** (Medical Director)." (AETPER00503) (emphasis added).

An Aetna representative spoke to New Haven's Jessica E., CSW, on July 10, 2015, to determine whether New Haven met Plan requirements for a residential treatment facility. (AETNAPER00531). The record of that conversation reflects that services at New Haven are not "managed by a licensed Behavioral Health Provider who, while not needing to be individually contracted, needs to (1) meet the Aetna credentialing criteria as an

6

individual practitioner, and (2) function under the direction/supervision of a licensed psychiatrist (Medical Director)." *Id.* New Haven informed Aetna that it did not have a licensed psychiatrist as a medical director, but that the facility was instead directed by a licensed clinical social worker. Based on that information Aetna informed Plaintiffs that above cited specific Plan Sponsor Criteria were not met and, therefore, the service was not a covered service.

Plaintiffs assert various reasons why Aetna's denial of their claims should be reversed. Each is discussed below and rejected.

### a. failure to substantively respond

Plaintiffs urge that because Aetna failed to substantively respond to various issues raised in their appeals, Aetna's denial must be reversed. The Court disagrees.

As Plaintiffs note, an ERISA plan administrator is required to:

> (1) provide adequate **notice in writing** to any participant or beneficiary whose claim for benefits under the plan has been denied, **setting forth the specific reasons for such denial**, written in a manner calculated to be understood by the participant, **and**
>
> (2) **afford** a reasonable opportunity to any **participant whose claim for benefits has been denied** for a **full and fair review** by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (emphasis added)..

The record is clear that Aetna provided Plaintiff notice in writing stating the reason for its initial denial (AETPER00130), denial of their level one appeal (AETPER00154-156), and denial of their level two appeal (AETPER00219-221).[6]

A full and fair review requires: "knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992) (citations & quotation marks omitted). *See also* 29 C.F.R. § 2560.503-1(h)(2) (outlining essential procedural requirements for a full and fair review – 60 days to appeal; opportunity to submit comments, documents, records etc.; reasonable access to documents, records and other information; and "a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination").

---

[6] Plaintiffs also assert that "Aetna failed to engage in a meaningful dialogue during the appeals process." Pls.['] Reply Mem. at 3. *See also* Pls.['] Mot. at 17. The authority they rely on, however, requires a clear explanation for any denial, and if additional information is needed for the plan administrator to make a decision, the administrator must ask for it. *See Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003) (same). *See also* 29 C.F.R. § 2560.503-1(h)(2)(iv) (appeal of an adverse benefit determination to "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination"). Here, Plaintiffs were provided with a clear explanation for denial, which did not require additional information from Plaintiffs for Aetna to make its decision. And as discussed in the body of this decision, the record reflects that Aetna considered all relevant information.

The record reflects that Aetna afforded Plaintiffs a full and fair review at both level one and level two appeals as required. (AETPER00154-156, AETNAPER00219-221). Plaintiffs' protestations that "Aetna's denials did not address in any meaningful way the points raised by [Plaintiffs]", Pls.['] Mot. at 19, is unsupported by authority and obviously different from the requirement that "the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Sandoval,* 967 F. 2d at 381. Aetna in its responses to Plaintiffs' appeals states that it considered all available information, including the first appeal request, the second appeal request, the original claims, Aetna policies and procedures, Aetna's precertification database, Aetna's provider database, and the summary plan description for Becton Dickinson Health Plan. (AETPER00154-156, AETNAPER00219-221) There simply is no evidence before the Court that Aetna failed in affording Plaintiffs a full and fair review.

**b. licensed health provider**

Plaintiffs' also contend that New Haven qualified for coverage under the Plan because it was licensed by the State of Utah as a residential facility for youth. This is so, Plaintiffs reason, because "Behavioral Health Provider" is defined in Plan documents as "[a] licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions." (AETPER00489).

Plaintiffs' position is rejected. Meeting applicable licensing standards is only one of numerous Plan requirements. (AETPER00502-503). A contract is to be read giving meaning to all terms and ignoring none. *Utah Transit Auth. v. Greyhound Lines, Inc.* 355 P. 3d 947, 959 (Utah 2015). Under Plaintiffs' position, the Licensed Psychiatrist requirement would be duplicative of the Licensing Standards requirement and

9

unnecessary. Such reasoning runs afoul of accepted rules of contract interpretation.[7]

### c. ambiguous language

The Court likewise rejects Plaintiffs' position that the Plan language on which Aetna relies for its denial is ambiguous. Plaintiffs acknowledge that "the [Plan] language unequivocally requires that individually licensed clinicians have to function under the direction or supervision of a licensed psychiatrist", Pls.['] Mem. Opp'n at 25, but urge that "[a] reasonable reader is left to wonder whether the parenthetical Medical Director is ... simply an example of a licensed psychiatrist who provides direction or supervision to other individual clinicians or .... that a psychiatrist, acting is [sic] Medical Director, is a prerequisite for a residential treatment facility to qualify for coverage under the Plan." *Id.* at 25-26.

"Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Admin. Comm. of Wal-Mart Asoc. Health and Welfare Plan. v. Willard*, 393 F.3d 1119, 1123 (10th Cir. 2004) (internal quotation marks omitted). In determining whether policy language is ambiguous, a court interprets the policy according to its plain meaning. *Rasenack v. AIG Life Ins. Co.* 585 F.3d 1311, 1318 (10th Cir. 2009). Language is given "its common and ordinary meaning *as a reasonable person in the position of* [the plan] participant not the actual

---

[7] In any event, Plaintiffs never offered any evidence that New Haven functioned 'under the direction/supervision of a licensed psychiatrist" as the Plan requires. (AETPER00130, AETPER00503). Their argument that a staff psychiatrist was in charge is not supported by the record. *See.* n. 8.

10

participant, would have understood the words to mean." *Blair v. Metro. Life Ins. Co.,* 974 F.2d 1219, 1221 (10th Cir. 1992) (emphasis in original).

The Court concludes that a reasonable person giving the Plan language its common and ordinary meaning would understand that services are to be provided by a behavioral health provider who must be under the direction/supervision of someone who is a licensed psychiatrist. (AETPER000503). The Court agrees with Aetna that the "issue is not whether any of the licensed psychiatrists at New Haven have the 'honorific title' of Medical Director, but whether the services are managed by an individual who functions under the direction/supervision of a licensed psychiatrist." Def.['s] Reply Mem. at 9. "The Licensed Psychiatrist Requirement is a requirement of the Plan for determining whether a particular facility is recognized by the Plan as a Residential Treatment Facility in the first instance. It is not related to a particular claimant's treatment."[8] *Id.* at 11.

Having concluded that the foregoing terms are not ambiguous, the Court will not apply the doctrine of *contra proferentem,* by which ambiguities are construed against the drafter, as Plaintiffs urge. *See Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1253-1254 (10th Cir. 2007) (when the standard of review is de novo and the terms of an ERISA

---

[8] Plaintiffs admit that 'the Plan clearly states that licensed professionals at New Haven must be directed or supervised by a psychiatrist". Pls.['] Opp'n Mem. at 26. They assert, however, that because the record reflects that a psychiatrist, William Bunn, D.O., was part of Kirstyn's treatment team, it is "irrational" not to believe that the psychiatrist as "the most highly credentialed and qualified member of the treatment team", *id*, was not directing or supervising the treatment. The record does not support Plaintiffs' supposition. Kirstyn's Master Treatment Plan clearly lists her primary therapist as Jessica Endres and provides for her to meet only once a month with the Consulting Psychiatrist for purposes such as evaluation of "anxiety and OCD symptoms for medication review", and "mood fluctuation". (AETPER00314-321).

plan are ambiguous, the doctrine of *contra proferentem* applies and ambiguities are construed against the drafter of the plan).

### d. Parity Act

The Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans and health insurance coverage offered in connection with group health plans." *Am. Psychiatric Ass'n v. Anthem Health Plans*, 50 F. Supp. 3d 157, 160 (D. Conn. 2014), *aff'd*, 821 F. 3d 353 (2d Cir. 2016) (quoting *Coal For Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010)).

#### (1) post hoc rationale

The Court rejects Plaintiffs' assertion that Aetna's opposition to its Parity Act position in this litigation must be disregarded because Aetna failed to present that opposition during the pre-litigation appeal process. Plaintiffs correctly note that "Tenth Circuit law is clear about the inability of either party in an ERISA benefits recovery case to introduce facts for the first time in litigation that could and should have been presented in the pre-litigation appeal process." Pls.['] Opp'n Mem at 29. However, the Court agrees with Aetna that it has not attempted to introduce new facts or rationales for its decision to deny Plaintiffs' claim for treatment, which was that services at New Haven were nor a

covered benefit. Rather Aetna simply has responded to Plaintiffs' positions pressed in this litigation.[9]

### (2) Parity Act compliance

Plaintiffs in the alternative urge that Aetna's denial of coverage violates the Parity Act because "[t]he requirements Aetna imposed on residential treatment facilities to be eligible for coverage under the Plan are more stringent than the requirement the Plan provides for either rehabilitation facilities or skilled nursing facilities to be eligible for coverage under the Plan." Pls.['] Opp'n Mem. at 32. Plaintiffs reason this is so because the Plan does not require that an eligible rehabilitation facility be directed or supervised by a medical doctor, and because the Plan allows a "Skilled Nursing Facility" to be supervised by a physician or an R.N. *Id*. at 32-34. Plaintiffs conclude that these restrictive requirements can fairly be characterized as nonquantitative treatment limits in the Plan that run afoul of the Parity Act.[10]

---

[9] Plaintiffs presented no substantive argument regarding the Parity Act during the pre-litigation process. Plaintiffs in both their first appeal letter (AETOER00127) and their second appeal (AETPER00164-65) simply conclude that the Parity Act mandates coverage. Plaintiffs' conclusory statements are not "specifically articulated in the administrative record" and Aetna's opposition to Plaintiffs' articulated position in these proceedings does not constitute a prohibited "post hoc rationale". *See Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1140-41 (10th Cir. 2012) (generally discussing post hoc rationale).

[10] "Treatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year) and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a). *See also id* at (c)(4)(ii) (providing illustrative list of nonquantitative treatment limitations).

The Court is not persuaded that Aetna's denial of coverage in this case violates the Parity Act. Plaintiffs provide no case authority for their position. As Aetna notes, the difference in requirements is not necessarily an improper limitation on mental health care, but recognition of the inherent difference in treatment at those facilities. Federal regulations provide a standard for scrutinizing nonquantitative treatment limitations.

> A group **health plan** (or health insurance coverage) **may not impose a nonquantitative treatment limitation with respect to mental health ... benefits** in any classification **unless, ... any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health** ... **benefits** in the classification **are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medica/surgical benefits** in the classification.

29 C.F.R. § 2590.712(c)(4)(i) (emphasis added). Examples provided in the regulations suggest that when "evidentiary standards are applied in a manner that is based on clinically appropriate standards of care for a condition" the plan is compliant with the Parity Act "even if the application of the evidentiary standards does not result in similar numbers of visits, days of coverage, or other benefits utilized for mental health conditions or substance use disorders as it does for any particular medical/surgical condition. *Id*. at (c)(4)(iii) Example 4. Plaintiffs' supposition fails to consider that the Plan differences they note may be properly based on clinically appropriate standards. They point to no evidence of record which persuades the Court that the Plan is noncompliant with the Parity Act*.*

**2. precertification**

On appeal, Plaintiffs also were informed that benefits were denied because they failed to obtain precertification. The Plan provides that "[s]tays in a Residential Treatment

Facility for treatment of mental disorders and substance abuse" require precertification. (AETPER000425). New Haven is such a facility. The Plan further provides:

> A **precertification** benefit reduction will be applied to the benefits paid if you fail to obtain a required precertification prior to incurring medical expenses. This means **Aetna** will reduce the amount paid towards your coverage, or your expenses may not be covered. You will be responsible for the unpaid balance of the bills.
>
> You are responsible for obtaining the necessary **precertification** from Aetna prior to receiving services from an **out-of-network provider**. Your provider may precertify your treatment for you; however you should verify with **Aetna** prior to the procedure, that the provider has obtained **precertification** from **Aetna**. If you treatment is not **precertified** by you or your provider, the benefit payable may be significantly reduced or your expenses may not be covered.

*Id*. (emphasis in original).

Kirstyn P. was admitted to New Haven on June 29, 2015. There is no record evidence that Plaintiffs sought precertification for Kirstyn's stay prior to her admission.[11]

In any event, because New Haven did not meet Plan criteria for a Residential Treatment Facility, the stay would not have been covered even if precertification had been requested.

---

[11] Although Plaintiffs dispute that they failed to seek precertification, the only supporting evidence they cite is AETPER00010, which as Aetna notes "is a printout of a telephone log that identifies it as a Benefit Inquiry dated June 23, 2015, not a Request for Precertification." Def.['s[ Reply Mem. at 3.
Plaintiffs' claim that "Aetna acknowledged that a request for precertification had been submitted and denied", Pls.['] Opp'n Mem. at 9, citing AETPER00048, appears to the Court to be based on nothing more than notes of a telephone call from Karilyn P., received by Aetna in the early hours of January 1, 2016. (AETPER00048, *see also* AETPER00046-47). Those documents do not support Plaintiffs' position that precertification was requested and denied.

### a. benefit reduction for failure to precertify

Plaintiffs assert that "even if precertification was not sought or was initially denied, the Plan calls for only a $250 reduction in the amount to be paid by Aetna". Pls.['] Opp'n Mem. at 35 (citing SCH0016). Plaintiffs' position is rejected. The document Plaintiffs reference provides:

> The Booklet contains a complete description of the precertification program. Refer to the "understanding Precertification" section for a list of services and supplies that require precertification.
>
> Failure to precertify your **covered expenses** when required will result in a benefits reduction as follows:
>
> ▪ A $250 benefit reduction will be applied separately to each type of expense.

(SCH00016) (emphasis added). Because Plaintiffs' claim was not a covered expense, the foregoing provision does not apply.[12]

## IV. CONCLUSION

For the reasons stated, IT IS ORDERED that Aetna's Motion for Summary

---

[12] As noted, with regard to precertification of out-of-network providers and benefits, the Plan clearly provides that "[i]f your treatment is not **precertified** by you or your provider, the benefit payable may be significantly reduced or your expenses may not be covered." (AETPER00425) (emphasis in original). A chart in that same document reflects that if precertification is not requested and would not have been covered if requested, then the expense is not covered. *Id.* The same chart also reflects that if precertification is requested and denied, then the expenses are not covered, but the denial may be appealed. *Id.*

Judgment (Doc. #24) is GRANTED, and Plaintiffs' Motion for Summary Judgment (Doc. #25) is DENIED.

Dated this 11th day of September, 2017

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT